IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN MENKINS,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-5258 |
| | : | |
| DEPARTMENT OF CORRECTIONS,<br>*et al.*, | : | |
| | : | |
|     Defendants. | : | |

**MEMORANDUM**

SÁNCHEZ, J.                                                                                           SEPTEMBER 26, 2025

Ryan Menkins, a convicted prisoner incarcerated at SCI Phoenix, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and state law naming the Department of Corrections ("DOC"), Wellpath Health Care Services ("Wellpath"), Superintendent Terra, Deputy Superintendent Sipple, Dr. Anninio, and Medical Director Dr. Letizio as Defendants. The Court previously granted Menkins leave to proceed *in forma pauperis* and granted his request to file an amended complaint.[1] Menkins's Amended Complaint is now before the Court on statutory screening. For the following reasons, the Amended Complaint will be dismissed. Menkins will be given an opportunity to file a second amended complaint.

**I.      FACTUAL ALLEGATIONS**[2]

---

[1] Menkin's initiated this case by filing a *pro se* Complaint on October 1, 2024, and subsequently requested to proceed *in forma pauperis*. On December 19, 2024, the Court stayed all proceedings in this case after taking judicial notice of the filing of a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code by Wellpath Holdings, Inc. in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, *see In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.) (the "Wellpath Bankruptcy case"), and the Orders of the Bankruptcy Court enforcing the automatic stay under 11 U.S.C. § 362(a). (ECF No. 15.) On May 21, 2025, the Court lifted the stay. (ECF No. 21.) Menkins subsequently asked to amend his Complaint. (ECF No. 24.)

[2] Menkins's Amended Complaint ("Am. Compl.") consists of fifteen typewritten pages. (ECF No. 28). He attached three-hundred and sixty pages of exhibits to his Amended Complaint,

Menkins alleges that he has "been under the custody, and in the care of the Department of Corrections and their medical provider," Defendant Wellpath. (Am. Compl. at 1.) He asserts that he has been "subjected to a very extraordinary series of acts of medical neglect" that has left him with an "even more complex medical problem." (*Id.* at 2.) He filed an initial grievance on August 25, 2023, "after having a very disturbing visit" with Wellpath employees related to a medical visit for his back injuries. (*Id.*) He attached this grievance to his Amended Complaint, which reflects that on August 24, 2023, he went to a sick call and was seen by Defendant Dr. Annino. (*See* ECF No. 28-1 at 338-339.) Menkins alleges in his grievance that Dr. Annino refused to treat him and told him that he can buy Tylenol in the commissary even though he had previously been prescribed Amitriptyline at the Federal Detention Center ("FDC") Pain Clinic for deteriorating discs and spacing in his spine. (*Id*. at 339.) He mentions he has been at SCI Phoenix since May 16, 2023, but the medical staff has not received his medical records from the FDC. (*Id.*) He states in his grievance that he attached copies of a CAT scan of his back and his medical reports, but he did not attach those documents to the Amended Complaint. (*Id.*)

On September 19, 2023, he alleges "he received the initial review and response back from the grievance coordinator." (*See* Am. Compl. at 2.) He attached this response denying his grievance to the Amended Complaint, which reflects that, per the DOC, Dr. Anninio reviewed a

---

mainly consisting of documents in the Wellpath Bankruptcy case, (*see* ECF No. 28-1 at 1-241), and documents involving a suspension of Defendant Dr. Letizio's medical license (*see id*. at 242-336). He also attached a copy of his August 25, 2023, inmate grievance, medical requests, and SCI Phoenix's responses to his grievance that appear to be more relevant to his allegations than the preceding exhibits. (*See id*. at 337-356.) The Court considers the entirety of the submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Amended Complaint. Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

copy of Menkin's lumbar spine X-rays that he brought with him to the appointment. (*See* ECF No. 28-1 at 340.) The response notes that he has tried Tylenol, naproxen, and ibuprofen without relief. (*Id.*) After Dr. Anninio informed Menkins that Amitriptyline would not be prescribed, she attempted to discuss over-the-counter options with him, but he became argumentative and walked out of the medical visit prematurely. (*Id.*) The response also reflects that Dr. Anninio discussed the visit with Defendant Dr. Letizio and subsequently notes "Amitriptyline Denied." (*Id.*)

Menkins appealed the grievance denial on September 26, 2023, (*see* Am. Compl. at 2), and attached his appeal and the appeal response to the Amended Complaint. (*See* ECF No. 28-1 at 341-343.) In his appeal, he denied walking out of the visit and claimed that Dr. Anninio said Amitriptyline would not be prescribed "due to cost." (*Id.* at 341.) According to the response to the grievance appeal, Defendant Superintendent Terra denied his appeal based on his finding that Menkins received appropriate medical care, and medications are prescribed "at the discretion of the medical provider." (*Id.* at 343.) Menkins then claims that on December 5, 2023, he "received a grievance referral notice indicating that they submitted this appeal for further review." (Am. Compl. at 2.) The final appeal decision response attached to the Amended Complaint reflects that after a review of his medical records and determining that reasonable medical care was provided, SCI Phoenix's decision was upheld by the Secretary's Office Inmate Grievances and Appeals. (*See* ECF No. 28-1 at 345.) Menkins alleges that this decision "was nothing but a prefabricated story." (Am. Compl. at 2.) The Court notes these recited factual allegations about what actually happened during the August 24 visit with Dr. Anninio come from the attached documents related to the grievances, and Menkins does not allege a majority of these facts in the body of his Amended Complaint.

3

Menkins asserts that after he filed the grievance on August 24, he filed numerous sick call requests, requests to the staff, and grievances, which "did not help" even though he did "everything per their policies." He further claims the DOC and their employees did "absolutely nothing to rectify the situation in regard to [his] back injuries." (*Id.*) He claims that he has tried "on numerous levels to be properly treated by medical," but has not "received any medical treatment despite requesting it." (*Id.* at 3.) For instance, he filed eight sick call requests between August 29, 2023, and January 10, 2024, but "was never seen or attended to." (*Id.* at 3.) He attached six of these requests to his Complaint, reflecting that he requested medical care for his back pain on August 29, September 15, October 6, November 19, December 5, 2023, and January 10, 2024. (ECF No. 28-1 at 347-352.) In the requests, he states that his medical requests were continually ignored. (*Id.*) He further claims that he filed thirteen "request to staff slips to various employees within the [DOC] trying to get some kind of medical attention in order to rectify [his] ongoing medical issues." (Am. Compl. at 3.) He attached three of these requests to his Amended Complaint, two of which were addressed to Dr. Letizio, requesting that Dr. Letizio review his medical records and properly evaluate him because his request for medical treatment was being disregarded. (*See* ECF No. 28-1 at 354, 355.) The third attached inmate request was to "CHCA Ms. Huner," who is not named as a defendant, asking for help with getting treatment and his medication. (*See* ECF No. 28-1 at 356.) In those slips, he states that he believes his request for medical treatment was being ignored in retaliation for filing grievances. (*See* ECF No. 28-1 at 349, 355.)

As a result of these events, he brings claims against Superintendent Terra, Deputy Superintendent Sipple, Wellpath, Dr. Anninio, and Dr. Letizio for failing to provide him proper medical attention when they were aware of his back injuries in a manner that was deliberately indifferent to his serious medical need. (*See* Am Compl. at 8-12.) He further asserts that all

4

Defendants were negligent, (*id*. at 7-11), and that Defendant Wellpath "had a relevant policy and custom, and that policy caused the constitutional said violations" alleged in the Amended Complaint. (*Id*. at 6.) He sustained back injuries that have "far worse deteriorated because of the Defendant's negligence." (*Id*. at 4.). He requests money damages and for Defendants to pay for his future medical costs. (*Id*. at 12.)

## II.     STANDARD OF REVIEW

Because Menkins is proceeding *in forma pauperis,* 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether an amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the amended complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Menkins is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their

complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

**III.    DISCUSSION**

Menkins asserts his constitutional claims pursuant to § 1983, the vehicle by which such claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise

6

to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207).

### A.  Claims Against the DOC and SCI Phoenix[3]

States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). The DOC and SCI Phoenix are arms of the Commonwealth entitled to Eleventh Amendment immunity that are not "persons" for purposes of § 1983. *See Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI–Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."); *Endrikat v. Little*, No. 23-2167, 2023 WL 8519196, at *3 (3d Cir. Dec. 8, 2023) (*per curiam*) (we concur with the District Court's assessment that Endrikat failed to state a claim with respect to [the Pennsylvania DOC, SCI] Waymart, and the Pennsylvania Board of Probation and

---

[3] Although he does not include SCI Phoenix in the heading of his Amended Complaint, he lists SCI Phoenix as "being sued as a public entity" as a facility of the DOC. (*See* Am. Compl. at 4.) Therefore, the Court will treat SCI Phoenix as a named Defendant.

7

Parole, as they are not subject to suit under § 1983) (citing *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973)). The Court will therefore dismiss the claims against the DOC and SCI Phoenix.

### B.   *Monell* Claims Against Wellpath

Although a private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances, the United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). Rather, to hold a private health care company like Wellpath liable for a constitutional violation under § 1983, Menkins must allege Wellpath had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)).[4]

---

[4] A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom., Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

Menkins makes only vague, generalized, and conclusory allegations that are entirely insufficient to support his claim against Wellpath. He asserts that Wellpath "had a relevant policy and custom, and that policy caused the constitutional said violations" (Am. Compl. at 6.). However, he fails to identify the specific policy or custom of Wellpath he is referring to, which is fatal to his claim. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*). Accordingly, Menkins's claims against Wellpath are not plausible as pled and will be dismissed without prejudice.

    **C.    Claims Against Dr. Anninio and Dr. Letizio**

Menkins raises claims against Dr. Anninio and Dr. Letizio for failure to provide medical treatment based the denial of medical care for his back injuries. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

9

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Additionally, as explained above, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207.

The majority of the allegations in the Amended Complaint generally assert that Dr. Annino and Dr. Letizio were aware of Menkins's back injuries and failed to provide him proper medical care. (*See* Am Compl. at 11-12.) Menkins relies heavily on the grievances and inmate requests that are hidden at the end of a three-hundred-and-sixty-page exhibit attached to his Amended Complaint. (*See* ECF No. 28-1 at 337-356.) Most of the exhibit contains documents related to the Wellpath Bankruptcy case, (*see id.* at 1-241), and documents involving a suspension of Dr. Letizio's medical license (*see id.* at 242-336), that do not appear to provide relevant factual background for Menkins's allegation related to inadequate medical care. In conducting a statutory screening under 28 U.S.C. § 1915(e)(2)(B), the Court may consider exhibits attached to a *pro se* plaintiff's complaint. *See Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)). However, a plaintiff may not state a claim by relying solely on exhibits. *See Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e

cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."); *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

Although the Court can discern some of the contours of Menkins's claims in broad strokes from the exhibits, such as his complaint that his request for Amitriptyline for his back injuries was denied, the factual allegations Menkins intended to incorporate from the exhibits are not only unclear, but contradictory. For instance, the response denying his grievance attached to the Amended Complaint reflects that Dr. Anninio reviewed a copy of Menkin's lumbar spine X-rays that he brought with him and declined to prescribe Amitrtiplyne based on her finding during the medical visit. (*See* ECF No. 28-1 at 340.) The response notes that she attempted to discuss over-the-counter options with him, but he became argumentative and walked out of the medical visit prematurely. (*Id*.) Additionally, the responses to the denial of his appeal and final appeal decision conclude that Menkins received appropriate medical care, and medications are prescribed at the discretion of the medical provider. (*Id*. at 343-245.) In contrast, in his attached grievance appeal, Menkins denies walking out of the visit and claims that Dr. Anninio said Amitriptyline would not be prescribed "due to cost." (*Id.* at 341-342). The Court may not speculate as to the factual allegations he intended to rely on for his claims based on these attachments and thus cannot fill the substantial gaps in his allegations for the purposes of stating a plausible claim. Accordingly, the Amended Complaint is too undeveloped and vague to state a claim to which Dr. Annino and Dr. Letizio can appropriately respond, and these claims will be dismissed. However, Menkins will

be permitted an opportunity to file a second amended complaint[5] if he can allege additional facts to "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### D.    Claims Against Superintendent Terra and Deputy Superintendent Sipple

#### 1.    Claims Based on Grievances

Menkins alleges that Superintendent Terra was involved in the grievance process by denying his initial grievance appeal for inadequate medical care and that Deputy Superintendent Sipple was aware of the grievance he filed. (*See* Am. Compl. at 8-9.) To the extent Menkins attempted to assert a stand-alone claim against Superintendent Terra, Deputy Superintendent Sipple, or any other prison staff member, based on the grievance process, it will be dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, any allegations intended to be predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances.") (internal

---

[5] In the body of his second amended complaint, should he choose to file one, Menkins is reminded he <u>must articulate in narrative form the facts giving rise to all claims</u> he intends to pursue, such as the specific interactions and conversations with Dr. Anninio at his medical visit, and specifically articulate how each Defendant was *personally involved* in the alleged violation of his rights. He must specifically allege the medical need for which he sought treatment, the treatment that was denied, and what each Defendant did or did not do that exhibited deliberate indifference to his medical need. Although he may attach exhibits, he may not rely on them exclusively to provide the factual basis for his claims.

citation omitted); *see also Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates") (internal quotations and citations omitted).

Furthermore, a prison official's involvement in the grievance process is generally not sufficient to allege liability under § 1983 for the events that gave rise to the grievance. *See, e.g., Dooley*, 957 F.3d at 374 (holding that attaching documents to grievance form is insufficient under *Rode* to show personal direction or actual knowledge by recipient of underlying facts); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). All claims based on the handling of grievances will be dismissed with prejudice.[6]

---

[6] The Court notes that in his request to staff slips he attached as exhibits, Menkins mentions his request for medical treatment was being ignored in retaliation for filing grievances. (*See* ECF No. 28-1 at 349, 355.) However, Menkins does not appear to make such a claim in the body of the Amended Complaint. Although a prisoner has no constitutional right to a grievance process as explained herein, a prisoner can state a claim based on retaliation for filing a grievance. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003*) and Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See, e.g., Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). If

### 2. Claims Based on Supervisory Authority

It appears that Menkins is also naming Superintendent Terra and Deputy Superintendent Sipple as defendants related to his medical complaints because they hold positions of supervisory authority in SCI Phoenix. (*See* Am. Compl. at 8-9.) Other than being involved in or aware of the grievances he filed, which is insufficient to allege liability under § 1983 for the reasons explained *supra*, Menkins makes no other factual allegations against Superintendent Terra and Deputy Superintendent Sipple other than being "responsible for the overall operation" of SCI Phoenix. (*See id.*) Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Thus, the mere fact that Superintendent Terra and Deputy Superintendent Sipple were "in charge" of SCI Phoenix does not state a plausible claim against them for Menkins's issues with his medical complaints.[7]

---

Menkins intended to bring a claim based on retaliation for filing a grievance, he is reminded to put factual allegations to support this claim in the body of the second amended complaint if he chooses to file one.

[7] Moreover, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Since there is no allegation that that Superintendent Terra or Deputy Superintendent Sipple were personally responsible for the medical care Menkins received for his back injuries, any liability against them must be premised, if at all, on facts alleging deliberate indifference to the consequences of a policy they established that caused constitutional harm.

This type of liability requires a plaintiff to "identify a supervisory policy or practice that the supervisor failed to employ, and [allege] that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory

---

Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*; *Chavarriaga*, 806 F.3d at 227.

Menkins alleges only that Superintendent Terra and Deputy Superintendent Sipple are responsible for the overall operation of SCI Phoenix and in charge of overseeing problems that are related to the medical department and medical staff. (*See* Am. Compl. at 8-9.) These general allegations are insufficient to state a plausible claim that Superintendent Terra and Deputy Superintendent Sipple, acting with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused Menkins to suffer a constitutional harm. To the extent that Menkins asserts a failure-to-train claim based on an act of a subordinate official, because the Court has determined that there are no plausible underlying claims, Superintendent Terra and Deputy Superintendent Sipple may not be held liable under this type of theory either. *Allen*, 804 F. App'x at 127. Accordingly, the claims against Superintendent Terra and Deputy Superintendent Sipple will be dismissed without prejudice.

IV. **CONCLUSION**

For the foregoing reasons, the Court will dismiss the Amended Complaint.[8] All claims against the DOC and SCI Phoenix and any claim based solely on grievances will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile"). Menkins's remaining claims are dismissed without prejudice. Menkins will be provided an opportunity to file a second amended complaint if he is capable of curing the defects the Court has identified in the claims dismissed without prejudice.[9]

---

[8] Because the Court has dismissed Menkins's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims against Defendants for negligence. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App' x 308, 309 (3d Cir. 2010). Menkins alleges he is incarcerated at SCI Phoenix and "one or more of [the] defendants live in this said District" (Am. Compl. at 4), which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Menkins has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

[9] Menkins filed a motion to stay the proceedings in this case, seeking a ninety-day extension to file a notice of chance of address due to his upcoming scheduled release from the DOC. (*See* ECF No. 29.) Although his motion will be denied because this case remains in statutory screening and no claims have been served for a responsive pleading, he will be given an extended period of time of sixty days to file his second amended complaint in the Court's accompanying Order. Menkins is reminded that it is <u>his responsibility</u> to notify the Court of an updated address within two weeks of an address change and that failure to do so may result in him not receiving court orders, which could affect his rights. *See* Local Rule 5.1(b).

An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

/s/ Juan R. Sánchez
**JUAN R. SÁNCHEZ, J.**